KING, Justice,
dissenting:
¶ 26. Linda Knox filed suit against Kroger alleging that its negligence in failing to provide adequate security was the proximate cause of the injuries she sustained as a result of a purse snatching. The Circuit Court of Hinds Count County held in favor of Knox. Kroger filed post-trial motions and argued that the evidence was insufficient to support Knox’s claim.
*446 ¶ 27. While on her way home from work on June 4, 2007, at approximately 5:00 p.m., Knox, a 61-year-old female, stopped at the Kroger on 1-55 in northeast Jackson to purchase groceries. Also that afternoon, Conerly Chapman, Isaiah Robinson and Lionel Kyles arrived at Kroger with the intention to “snatch a lady’s purse.” Chapman, Robinson, and Kyles drove through the Kroger parking lot until they spotted Knox walking out of the store toward her car.
¶ 28. Chapman drove by Knox and parked a few spaces beyond where she was parked. Robinson got out of the passenger side of the vehicle and walked toward Knox, walking faster as he approached her. When Knox refused to give up her purse, Robinson struck and severely injured her.
¶ 29. On September 4, 2007, Knox filed suit against Kroger, Isaiah Robinson, Lionel Kyles, Securitas Security Services, USA, Inc., Kendra Jackson, and T & M Jackson Development, LLC. The complaint alleged that Robinson was the person who snatched Knox’s purse and Kyles drove the get-away vehicle. On October 9, 2007, Robinson and Kyles were voluntarily dismissed from the lawsuit. Knox settled with Securitas/Jackson and T & M, leaving Kroger as the only defendant. On April 6, 2009, the case proceeded to trial.
¶ 30. Knox called Chuck Head, store manager of Kroger, as an adverse witness. Head testified that Kroger provided reasonable and adequate security to its customers. According to Head, in the three years prior to the Knox incident, there had been only three reports of purse snatching. Head testified that to secure the premises, Kroger had hired a sheriffs deputy to stand inside the foyer of the store and patrol the outside sidewalk from 9:00 a.m. until midnight. Head testified that Securi-tas officers had been hired to patrol the parking lot from 9:00 a.m. until 2:00 a.m. Head testified that, in case of incident, the sheriffs deputy and security officer were in contact via a walkie-talkie or cell phone and would work together to address the situation.
¶ 31. According to Head, in addition to security, Kroger provided a carry-out service to assist customers in transporting groceries to their cars. He suggested the presence of employees within the parking lot increased employee awareness to possible threatening situations and served as a deterrent to crime.
¶ 32. Allen White, a lieutenant with the Jackson Police Department, testified that he felt Kroger’s security measures were inadequate. White testified that he previously had discussed security measures with Kroger managers, including Head, and had recommended that Kroger should use off-duty police officers as security or place the uniformed, armed officer outside the store and the unarmed security guard inside the store.
¶ 33. Kenneth Goodrum and Tyrone Lewis testified for Knox as causation experts. Goodrum testified that, “In my expert opinion, I believe the armed security should have been reversed. The armed deputy should have been in the parking lot to protect the customers that were coming in there to spend their money and buy Kroger’s product. The security guard could have been inside at the front to deal with the shoplifting.” According to Good-rum, Kroger’s failure “to provide adequate security was the proximate cause of [Knox’s] injuries on that day.” Goodrum stated that “[a]n armed officer should have been in that parking lot.”
¶ 34. Lewis testified that the Securitas officers were inadequate because “they were not allowed to do anything when it comes to servicing and protecting that par *447 ticular property. They were only to observe and report, with no authority to act.” As for the proximate cause of Knox’s injuries, Lewis testified that “It was Kroger’s responsibility and it was their duty to provide adequate security on that property which they did not do.” According to Lewis, if an armed officer had been in the parking lot, the incident would not have occurred.
¶ 85. The jury considered the testimony and returned a verdict of $2,500,000 in compensatory damages in favor of Knox. Kroger filed its motion to alter or amend judgment and/or provide relief from the order of judgment by way of setoff and motion for new trial or in the alternative, motion for judgment notwithstanding the verdict (JNOV). As part of the motion, Kroger moved the trial court for a setoff against the judgment for the amounts paid by the settling defendants, T & M and Securitas, which totaled $1,075,000. The trial court denied Kroger’s post-trial motions, and Kroger filed its appeal.
¶ 36. This Court applies a de novo standard of review to the denial of a motion for judgment notwithstanding the verdict (JNOV), considering all of the evidence in the light most favorable to the verdict. United States Fid. and Guar. Co. of Miss, v. Martin, 998 So.2d 956, 964 (¶ 19) (Miss.2008) (citations omitted). This Court has stated that “[a] motion for JNOV is a challenge to the legal sufficiency of the evidence, and this Court will affirm the denial of a JNOV if there is substantial evidence to support the verdict.” Id. (citations omitted). “Substantial evidence” has been defined as “information of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions.” Id. (citations omitted).
¶ 37. To prevail on her claim, Knox must demonstrate: (1) a duty owed to her by Kroger, (2) a breach of that duty, (3) damages, and (4) a causal connection between the breach and the damages, such that the breach is the proximate cause of the damages. Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc., 519 So.2d 413, 416 (Miss.1988) (citations omitted). Knox argues that, because of the atmosphere of violence, Kroger owed her a duty to maintain an armed security officer in its parking lot.
¶ 38. In support of her claim, Knox offered testimony that a number of incidences of criminal activity had been reported at the Kroger parking lot and along the 1-55 North corridor. The testimony established that, prior to the assault upon Knox, Kroger had determined that it needed to employ armed and unarmed security officers, with the armed officers stationed inside the store, and the unarmed officers stationed in the parking lot. Knox offered Goodrum and Lewis as experts in premises liability, and each testified that the reported incidents in the Kroger parking lot and along the 1-55 North corridor dictated that the armed security officer should have been stationed in the Kroger parking lot. Among the incidents about which Goodrum and Lewis testified were three purse-snatchings in the Kroger parking lot over a three-year period. Both witnesses testified that Kroger’s failure to place the armed guard in the parking lot was the proximate cause of Knox’s purse being snatched and of her resulting injuries. Knox called Allen White of the Jackson Police Department, who stated that he had recommended to Kroger that the unarmed security personnel should be placed inside the store, and the armed security personnel should be placed outside the store. Knox also offered the testimony of Chapman that, if he had seen an armed police officer, he would have been deterred from pursuing the purse-snatching, but the presence of a Securitas officer would not have had the same effect.
*448 ¶ 89. Accepting this testimony as true, the question is whether Kroger was sufficiently placed on notice of the existence of an atmosphere of violence in its parking lot, that having elected to employ both armed and unarmed security personnel, Kroger owed a duty to Knox and its others patrons, to utilize the armed security personnel in the parking lot and the unarmed security personnel inside the store. See InTown Lessee Associates, LLC v. Howard, 67 So.3d 711, 717-718 (¶¶ 20-28) (Miss.2011). The notice of an atmosphere of violence may be either actual or constructive. Double Quick, Inc. v. Moore, 73 So.3d 1162, 1167 (¶ 16) (Miss.2011); Double Quick, Inc. v. Lymas, 50 So.3d 292, 298 (¶30) (Miss.2010). Kroger made the determination, well prior to this event, that a need for security existed at its 1-55 store, both armed and unarmed. Having determined that armed and unarmed security officers were needed at its 1-55 store, Kroger made the determination that it would use the armed security officers inside the store, while using the unarmed security officers in the parking lot. The evidence shows that, among the incidents reported, Kroger experienced four-purse snatchings in its parking lot over a three-year period. Whether this was sufficient to give Kroger notice of an atmosphere of violence and whether Kroger owed a duty to Knox and other patrons to utilize the armed security personnel in the parking lot is a question of fact to be resolved by the jury. InTown Lessee, 67 So.3d at 717-718 (¶¶ 20-23). In resolving the question of whether Kroger was placed on notice of an atmosphere of violence, the jury was entitled to consider and give such weight as it deemed appropriate to Kroger’s previous decision to employ both armed and unarmed security officers at its 1-55 store.
¶ 40. In addition to the expert testimony of criminal activities along 1-55 corridor and criminal activities within the Kroger parking lot, Knox also offered the testimony of one of her assailants that he would not have attacked her if an armed security officer had been visible in the parking lot. The weight and credibility to be accorded all of this evidence is a matter which falls within the province of the jury. See Thomas v. Columbia Group, LLC, 969 So.2d 849, 855 (¶22) (Miss.2007). If the jury found this evidence to be credible, it was obligated also to determine whether Kroger was sufficiently aware of the activities in its parking lot that, having determined to employ armed and unarmed security personnel, it owed a duty to Knox and its other patrons to use the armed security personnel in the parking lot and the unarmed security personnel inside the store. By returning a verdict for the plaintiff, the jury clearly found such a duty.
¶ 41. In addressing a motion for JNOV, the trial court is to view all of the evidence in the light most favorable to the verdict. Martin, 998 So.2d at 964 (¶ 19). If, in fact, substantial evidence supports the verdict, the court is obligated to deny the motion for JNOV. Id. Reasonable and substantial evidence provides a foundation for the jury’s verdict. Thus, while we might have decided otherwise, we cannot say with confidence that the verdict is not supported by substantial evidence.
¶ 42. Knox’s experts based their opinions upon their training, experience, and a review of the relevant police reports, as well as the reports generated by Kroger. That is an acceptable practice. See Thomas, 969 So.2d at 855 (¶ 22). It was then for the jury to determine with these expert witnesses, as with all witnesses, the weight and credibility to accord to their testimony. The jury clearly found this testimony to be credible. Thus, I would affirm the jury’s verdict.
*449 ¶ 43. Knox settled with the other defendants prior to trial. However, the trial court did not inform the jury of the settlement, nor was the jury requested to apportion fault to the defendants. After the verdict, Kroger asked the trial court to reduce the verdict by the amounts paid by the settling defendants.
¶44. Under Mississippi Code Section 85-5-7(2), a party is entitled to be made whole, but is not entitled to be twice compensated for the same injury.[24] Miss.Code Ann. § 85-5-7(2) (Rev. 2011). Accordingly, the trial court should have reduced the jury verdict of $2,500,000 by $1,075,000, the settlement amount paid to Knox by the other defendants.
¶ 45. Therefore, I would affirm the verdict in favor of Knox, but remand this matter to the Hinds County Circuit Court to properly credit against the verdict those sums paid by the settling defendants.
KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION.

. Section 85-5-7(2) provides that:
Except as otherwise provided in subsection (4) of this section, in any civil action based on fault, the liability for damages caused by two (2) or more persons shall be several only, and not joint and several and a joint tort-feasor shall be liable only for the amount of damages allocated to him in direct proportion to his percentage of fault.
Miss.Code Ann. § 85-5-7(2) (Rev. 2011).